UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

TURNER W. BRANCH, P.A.

    Plaintiff,

v.                                CASE NO. 1:13-cv-00110

WILLIAM SHANE OSBORN and
MEHAFFY WEBER, P.C.

    Defendants

## VERIFIED COMPLAINT

Turner W. Branch, P.A. ("Branch"), for its causes of action against Defendants, states as follows:

## PARTIES AND JURISDICTION

1. Branch is now, and at all relevant times was, a New Mexico professional association which conducts business in the State of New Mexico as the Branch Law Firm.

2. William Shane Osborn resides in Houston, Harris County, Texas.

3. Mehaffy Weber, P.C. is a Texas professional corporation that conducts business in the State of Texas.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, federal question jurisdiction, based upon the provisions of 18 U.S.C. §1030.

5. Because Branch is a citizen of New Mexico, and Defendants are both citizens of Texas, there is also complete diversity of citizenship pursuant to 28 U.S.C. § 1332(a). The amount in controversy is over $75,000.

6. Venue is proper in the District of New Mexico because the events which are the basis of this lawsuit either occurred in, or are otherwise connected with the State of New Mexico.

**GENERAL ALLEGATIONS**

7. Branch operates a law firm in Albuquerque, New Mexico, which focuses on personal injury and mass tort litigation.

8. Osborn was employed by Branch's Houston affiliate, Branch Law Firm, LLP (the "LLP") from May 19, 2008 to May 7, 2012 first as a law clerk while he was in school and later as an attorney after he became licensed to practice law in November 2010. Branch and the LLP work closely on certain matters, The LLP makes attorneys and resources available to Branch as needed.

9. The LLP was Osborn's first employer after graduating from law school.

10. Mehaffy operates a law firm in Texas, including an office in Houston, Texas.

11. Mehaffy employs Christopher Grimm, Osborn's personal friend and law school classmate.

12. Upon information and belief, prior to May 2012, Mehaffy did not represent plaintiffs in mass tort litigation.

13. During his employment with the LLP, Osborn regularly commuted to Albuquerque to work with Branch, where he had access to privileged and confidential documents that belonged to Branch and its clients, including information maintained on Branch's computer system.

14. Osborn's employment with the LLP terminated on May 7, 2012. That termination is one of the subjects of litigation between Osborn and the LLP, pending in the 164th District Court of Harris County, Texas, Cause No. 2012-34395 (the "Texas Proceeding").

15. In the course of discovery in the Texas Proceeding, the LLP learned that Osborn copied and took with him privileged and confidential information belonging to Branch and its clients.

16. On information and belief, Osborn copied and took at least 150 gigabytes of privileged and confidential information belonging to Branch and its clients.

17. Branch does not know all details concerning the quantity and type of information taken from Branch by Osborn, but all such information was taken without Branch's knowledge or consent.

18. Osborn did not return the information illicitly taken from Branch at the conclusion of his employment with the LLP.

19. Furthermore, the information was not returned even upon the request of the LLP, once the theft was uncovered in the course of the Houston litigation.

20. Discovery in the Houston case indicates, and on information and belief Branch here avers, that a substantial quantity of the information concerned hundreds of client files assembled at enormous expense in connection with mass tort claims against the manufacturer of the drug Avandia.

21. Information believed to have been misappropriated by Osborn includes materials that effectively constitute a blueprint for developing and pursuing a plaintiffs' mass tort practice, particularly with respect to drug manufacturers.

22. Information believed to have been misappropriated by Osborn includes information that is not known to others who lack authorization from, or have a confidential relationship with, Branch.

23. Information believed to have been misappropriated by Osborn includes information the secrecy of which has been actively protected by Branch.

24. The secrecy of information included among that believed to have been misappropriated by Osborn affords Branch a competitive advantage in the marketplace compared to others who do not know or use such information.

25. Information believed to have been misappropriated by Osborn include information that are trade secrets of Branch, the unauthorized use or disclosure by others of which damages Branch in ways that exceed remediation solely through monetary damages.

26. While employed by the LLP in his first and second year out of law school, Osborn did perform limited work, appropriate to his limited skills, in connection with Branch's Avandia cases. That work terminated before his employment with the LLP terminated.

27. Osborn's work at Branch on Avandia matters would have required access to only a fraction of the materials that Osborn secretly copied from Branch's files, if any at all.

28. No work performed by Osborn on the Avandia matters, or any other Branch matter, required that Osborn download files from Branch's system to his own hard drive.

29. Files and information believed misappropriated by Osborn far exceed in scope and volume that to which Osborn may have had legitimate access during his employment with the LLP, working on Branch matters.

30. Legitimate use for Branch's files, if any, terminated upon or before the termination of Osborn's employment by the LLP.

31. On information and belief, Osborn copied Branch's files in an effort to obtain the methodology and procedure employed by Branch in developing and pursuing plaintiff mass tort

litigation – information that is of substantial value to Branch and to anyone desiring involvement in plaintiffs' mass tort litigation including, on information and belief, defendants herein.

32. On information and belief, Osborn misappropriated Branch's confidential files and trade secrets with the intention, among others, of holding such things hostage, to coerce payment to him from Branch or the LLP.

33. At some point in time, not yet disclosed or discovered, Osborn made some or all the copied Branch files available to Mehaffy, and Mehaffy copied such files onto its own computer system.

34. Neither Osborn nor Mehaffy gave notice to, nor had authority from the LLP or Branch to obtain any Branch files, transfer any Branch files, copy any Branch files, use any Branch files, or retain any Branch files.

35. Mehaffy did not notify the LLP or Branch that it received, had access to, copied, used, or retained any Branch information, and never volunteered to return it.

36. Upon learning that Osborn and Mehaffy had the Branch records, the LLP's representatives demanded that the material be returned.

37. Osborn and Mehaffy refused to return Branch's misappropriated files and information when asked to do so, thereby necessitating a motion for a restraining order in the Texas proceeding. The LLP's motion has been granted.

38. The LLP has a duty to recover information to which its employee gained access by reason of that employment, and which information was stolen by its employee, and it is attempting to do so in the Houston litigation. However, the information stolen belongs to Branch and it is Branch that has been damaged in an amount in excess of $75,000 by reason of the theft.

## COUNT I
## (Violation of Computer Fraud and Abuse Act, 18 U.S.C. §1030)

39. Branch incorporates each allegation in paragraphs 1 through 39.

40. Upon information and belief, Osborn accessed Branch's computer system and information stored on that system without authorization and in excess of any authorization.

41. Upon information and belief, Osborn and Mehaffy, either individually or in concert, willfully retained Branch's records, and refused to return them to Branch or the LLP at the time Osborn's employment was terminated or thereafter.

42. As a result of accessing and retaining Branch's files, Osborn and Mehaffy obtained privileged and confidential information from Branch's protected computers.

43. Upon information and belief, Osborn and Mehaffy obtained access to Branch files through the use of interstate commerce and communication.

44. Upon information and belief, Osborn, aided and abetted by Mehaffy, knowingly, willfully, and with the intent to defraud Branch, accessed the protected computer and obtained information with a value in excess of $75,000.

45. Branch has been forced to retain, interact with and pay attorneys to investigate defendants' acts and to prosecute this action and has, for these reason alone, suffered damages in excess of the statutory minimum of $5,000. Therefore, Branch is entitled to an award of reasonable attorneys' fees and to costs, including investigation costs incurred.

**WHEREFORE**, Branch respectfully requests that this Court enter an Order for:

    A. Damages as proven at trial;

    B. Punitive damages;

    C. Attorneys fees and costs incurred herein;

    D. Such further relief as it deems just and equitable.

## COUNT II
### (Misappropriation of Trade Secrets, §57-3A-1-7 NMSA)

46. Branch incorporates each allegation in paragraphs 1 through 39.

47. The Branch files taken and retained by Osborn and Mehaffy constitute Branch trade secrets as they set forth the Branch methodology for developing and prosecuting plaintiffs' mass tort litigation.

48. Osborn and Mehaffy acquired the Branch files through improper means, and wrongfully retained the information.

49. Osborn disclosed the Branch files to Mehaffy without Branch's consent.

50. Upon information and belief, at the time Mehaffy obtained the Branch files, it knew or had reason to know that Osborn had utilized improper means to acquire and retain them and had a duty to Branch to return the information without accessing same.

51. Mehaffy knew, or should have known, that Branch's client and case planning-related information disclosed by Osborn was secret, privileged and competitively advantageous information, and that Osborn's retention of the information, and his disclosure of the information to Mehaffy or any other person or entity, was improper and a breach of his duty to Branch.

52. Branch has also been damaged by the misappropriation of its confidential, privileged and trade secret information, by the investigative and remedial actions required in response to the discovered misappropriations.

53. Branch is concerned that Osborn and Mehaffy, jointly and severally, have benefited from the misappropriation of Branch's confidential, privileged and trade secret information, thereby obtaining Branch's knowledge, procedures and forms for the conduct of mass tort litigation otherwise not available to them without substantial and costly investments of time and resources.

7

54. Despite the knowledge that Osborn's copying of the Branch information and the delivery of same to Mehaffy was improper, Mehaffy retained Branch files, accessed those files, used those files, and refused to deliver them to the LLP notwithstanding its request.

55. Osborn and Mehaffy willfully and with malice obtained and retained Branch's trade secret information.

**WHEREFORE**, Branch respectfully requests this Court enter an Order for:

    A. Damages as proven at trial;

    B. Punitive damages as set forth in §57-3A-4(B), NMSA;

    C. Attorneys fees and costs incurred herein;

    D. Such further relief as it deems just and equitable.

Respectfully submitted,

KELEHER & McLEOD, P.A.

By:   /s/ Marian B. Hand
      Spencer Reid
      Marian B. Hand
      PO Drawer AA
      Albuquerque NM 87103
      Telephone: (505) 346-4646
      *Attorneys for Plaintiff*

STATE OF NEW MEXICO )
) ss.
COUNTY OF BERNALILLO )

## VERIFICATION

I, Turner Branch, President of Turner W. Branch, P.A., having been first duly sworn upon oath, state that I have read the foregoing Verified Complaint and the statements therein are true and accurate to the best of my knowledge and belief.

_____
TURNER BRANCH, President

SUBSCRIBED AND SWORN to before me this 29th day of January 2013.

_____
Notary Public

My Commission expires:

12-13-2015

OFFICIAL SEAL
Patricia R. Sanchez
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 12-13-2015