**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

TURNER W. BRANCH, P.A.,

       Plaintiff,

v.                                 Civ. No. 13-00110 MV/WPL

WILLIAM SHANE OSBORN and
MEHAFFYWEBER, PC,

       Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendant MehaffyWeber PC's Motion and Supporting Memorandum to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss for Lack of Personal Jurisdiction") [Doc. 11], Defendant MehaffyWeber, PC's Motion and Supporting Memorandum to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim ("MW's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim") [Doc. 13], and Defendant William Shane Osborn's Motion and Supporting Memorandum to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim ("Osborn's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim") [Doc. 14].   The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Motion to Dismiss for Lack of Personal Jurisdiction is well taken and will be granted, MW's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim is moot and will be denied as moot, and Osborn's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim is well taken in part and will be granted in part.

## BACKGROUND

Plaintiff filed a verified complaint against Defendants William Shane Osborn ("Osborn") and MehaffyWeber, PC ("MW"), alleging that that they violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and the New Mexico Trade Secrets Act ("NMTSA"), N.M. Stat. Ann. § 57-3A-1 *et seq.*   The claims in the complaint arise out of Defendant Osborn's undisputed action of accessing a computer owned by Plaintiff Turner W. Branch, P.A. ("Plaintiff"), and downloading information from that computer onto a flash drive.   [Doc. 1, ¶¶ 13, 15, 16; Doc. 14 at 17].   The complaint implicates Defendant MW by alleging that MW obtained and thereafter retained the information downloaded by Osborn.   [Doc. 1, ¶¶ 33, 41, 42, 43, 48, 50, 50].   The complaint alleges that Plaintiff is a New Mexico professional association that conducts business in New Mexico, Osborn is a Texas resident, and MW is a Texas professional corporation that conducts business in Texas.   [*Id.* ¶¶ 1-3].

The complaint alleges the following additional facts.   Plaintiff operates a law firm in Albuquerque, New Mexico, which focuses on personal injury and mass tort litigation.   [*Id.* § 7].   Defendant Osborn was employed by Plaintiff's Houston affiliate, Branch Law Firm, LLP (the "LLP").   [*Id.* ¶ 8].   Plaintiff and the LLP worked closely on certain matters, and the LLP made attorneys and resources available to Plaintiff as needed.   [*Id.*].   Osborn regularly commuted to Albuquerque to work at Plaintiff's office and had access to Plaintiff's privileged and confidential documents and computer files.   [*Id.* ¶ 13].

The complaint also alleges that the LLP terminated Plaintiff's employment on May 7, 2012.   That termination is the subject of litigation Osborn initiated against the LLP in the 164th District Court of Harris County, Texas, Cause No. 2012-34395 (the "Texas litigation").   [*Id.* ¶ 14].   In the course of discovery in the Texas litigation, the LLP learned that Osborn downloaded

2

information belonging to Plaintiff from Plaintiff's computer system.   [*Id.* ¶ 15].   At some point,

Osborn made some or all of the downloaded files available to MW, and MW copied the files onto

its own computer system.   [*Id.* ¶ 33].   MW is the attorney for Osborn in the Texas litigation.

[Doc. 13 at 3 n.2].   The complaint also alleges the information stolen belongs to Plaintiff, but that

the LLP has a duty to recover the information Osborn downloaded, that this duty stems Osborn's

employment with the LLP, and that the LLP is attempting to recover the information in the Texas

litigation.   [Doc. 1, ¶ 38].

Defendants move to dismiss the complaint on various grounds.   Defendant MW argues

that the Court should dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2)

because the Court does not have personal jurisdiction over MW.   In addition, Defendants MW

and Osborn argue that the Court should dismiss the complaint pursuant to Rule 12(b)(1) for lack of

subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be

granted.   Plaintiff argues that the Court has both personal and subject matter jurisdiction over

Defendants and that the complaint states valid CFAA and NMTSA claims.   In the alternative,

with respect to the motion to dismiss for lack of personal jurisdiction, Plaintiff asks the Court to

award jurisdictional discovery instead of dismissal.[1]

## STANDARD

I.   Personal Jurisdiction.

Motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(2) test a plaintiff's

theory of personal jurisdiction as well as the facts supporting personal jurisdiction.   The Rule

---

[1]   Likewise, as an alternative to dismissal for lack of subject matter jurisdiction or failure to state a claim, Plaintiff requests leave to amend its complaint.   Plaintiff, however, has not filed a motion to amend, but rather has buried its request in its response brief.   The question of amendment, therefore, is not properly before the Court.   *See* D.N.M.LR-Civ. 7.1(a) (requiring that a "motion must be in writing and state with particularity the grounds and the relief sought").

12(b)(2) standard governing a motion to dismiss for lack of personal jurisdiction is well established.   When a defendant challenges the court's jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists.   *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted). In the preliminary stages of litigation, this burden is "light," and prior to trial a "plaintiff is only required to establish a prima facie showing of [personal] jurisdiction."   *Doe v. Nat'l Med. Serv.*, 974 F.2d 143, 145 (10th Cir. 1992).   The plaintiff may make the required prima facie showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction over the defendant if true.   *See OMI Holdings v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).   Only the well-pled facts of a plaintiff's complaint, however, as opposed to mere conclusory allegations in pleadings or other materials, must be accepted as true.   *See Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).   Moreover, a plaintiff's jurisdictional allegations are not automatically accepted as true when contradicted by affidavit, although if the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor.   *See Wenz*, 55 F.3d at 1505.

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (citation omitted); *see also World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291 (1980) (holding that the Fourteenth Amendment's Due Process Clause requires that a defendant be subject to a court's personal jurisdiction before a judgment can be rendered against it).   In New Mexico, a federal court has

4

personal jurisdiction over a non-resident defendant only to the extent that the state's long-arm statute permits. *See Fid. & Cas. Co. v. Philadelphia Resins. Corp.*, 766 F.2d 440, 442 (10th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). That statute provides, in pertinent part:

> A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>
> (1) the transaction of any business within this state;
>
> . . .
>
> (3) the commission of a tortious act within this state.

N.M. Stat. Ann. § 38-1-16. In determining whether personal jurisdiction exists over an out-of-state defendant under the long-arm statute, New Mexico courts apply a three-part test, which asks whether (1) the defendant committed an act or omission specifically set forth in the long-arm statute; (2) the plaintiff's cause of action arises out of the alleged acts or omissions; and (3) the defendant established sufficient minimum contacts with New Mexico to satisfy due process concerns. *See Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54 (N.M. 2002) (citations omitted). In applying this test, the analysis of whether the defendant transacted business or committed a tortious act within New Mexico merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns. *See id.* at 54-55 (citing *Telephonic, Inc. v. Rosenblum*, 543 P.2d 825, 827 (N.M. 1975) ("We have repeatedly equated the 'transaction of business' . . . with the due process standard of 'minimum contacts[.]'"); *Tarango v. Pastrana*, 616 P.2d 440, 441 (N.M. Ct. App. 1980) (equating the terms "transaction of any business" and "commission of a tortious act" with minimum contacts sufficient to satisfy due process)). This is because New Mexico courts have interpreted the state's long-arm

statute as being coextensive with the Fourteenth Amendment's Due Process Clause, such that if jurisdiction is permitted under the Due Process Clause, it also is authorized by the long-arm statute. *See Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (citation omitted); *Tercero*, 48 P.3d at 54 (citation omitted).

The Fourteenth Amendment's Due Process Clause requires that for a court to assert personal jurisdiction over a defendant, the defendant must have (1) sufficient "minimum contacts" with the forum state (2) such that subjecting the defendant to the court's jurisdiction will not offend traditional conceptions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). The "defendant's conduct and connection with the forum State [must be] such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. A plaintiff may satisfy the "minimum contacts" standard arising under the Due Process Clause by making a prima facie showing that the court may exercise either general or specific jurisdiction over the defendant.

Specific jurisdiction requires a plaintiff to show that (1) a defendant has "purposely avail[ed itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," and (2) that "the litigation results from alleged injuries that arise out of or relate to those activities." *OMI Holdings*, 149 F.3d at 1090-91 (citing *Burger King Corp. v. Rudzewiczi*, 471 U.S. 462, 472 (1985)); *see also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996). The actions by the defendant *itself* must have created the substantial connection with the forum. *See OMI Holdings*, 149 F.3d at 1090-91 (citation omitted). Plaintiff's prima facie burden regarding the minimum contact necessary to establish specific jurisdiction is less stringent than his burden with respect to general jurisdiction, because general jurisdiction does not require a nexus between the contact and underlying injury. *See*

6

*Rosenberg v. Deutsche Bank AG*, No. 11-CV-2200, 2012 WL 1963356, at *5 (D. Colo. May 22, 2012) (citing *Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004)).   General jurisdiction requires a plaintiff to demonstrate that a defendant's contacts with the forum state were so pervasive as to confer personal jurisdiction by the continuous and systematic nature of the defendant's in-state activities.   *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *OMI Holdings*, 149 F.3d at 1090-91.   If a plaintiff makes a prima facie showing of general jurisdiction, a court can exercise personal jurisdiction over the defendant even if the plaintiff's underlying suit is unrelated to the defendant's contacts with the forum state.   *See Helicopteros*, 466 U.S. at 415.

If a court concludes that a defendant has minimum contacts with the forum state, the court next must determine whether the exercise of personal jurisdiction based on those contacts is consistent with traditional notions of "fair play and substantial justice."   *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1359 (10th Cir. 1990) (internal quotations and citations omitted).   In determining whether a court's exercise of personal jurisdiction is " 'reasonable' in light of the circumstances surrounding the case," *OMI Holdings*, 149 F.3d at 1091, a court should consider the following factors:   (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.   *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1279-80 (10th Cir. 2005) (internal quotations and citation omitted).

II.    <u>Subject Matter Jurisdiction</u>.

    A.    <u>Federal Question Jurisdiction</u>.

Section 1331 of Title 28 grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. "A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotation marks and citation omitted).

    B.    <u>Diversity of Citizenship Jurisdiction</u>.

Section 1332 of Title 28 grants district courts original jurisdiction of all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).   Under Section 1332, "the citizenship of all defendants must be different from the citizenship of all plaintiffs."  *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008).   Furthermore, a district court should not dismiss a case unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  *St. Paul Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289; *see Gibson v. Jeffers*, 478 F.2d 216, 220 (10th Cir. 1973) ("Ordering dismissal of an action in federal district court must . . . be based on a legal certainty that the claim is for less than the jurisdictional amount.") (citations omitted); *see also Watson v. Blakenship*, 20 F.3d 383, 386 (10th Cir. 1994) (plaintiffs must show that "it does not appear to a legal certainty that they cannot recover [the jurisdictional amount]").

C.    Supplemental Jurisdiction.

Section 1367(a) of Title 28 provides that in any civil action in which a district court has original jurisdiction founded on 28 U.S.C. Section 1331, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   28 U.S.C. § 1367(a).   A district court nonetheless may decline to exercise supplemental jurisdiction over a state claim if the court has dismissed all federal claims over which it has original jurisdiction.   *See* 28 U.S.C. § 1367(c)(3).   The Tenth Circuit has emphasized, "[w]hen all federal claims have been dismissed, [a district] court may, and usually should, decline to exercise jurisdiction over any remaining state claims."   *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

III.   Motions to Dismiss.

A.    Federal Rule of Civil Procedure 12(b)(1).

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).   "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."   *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

Whenever it appears that a district court lacks jurisdiction over the subject matter involved in an action, the court must dismiss the action.   *See Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988) (citation omitted), *cert. denied*, 489 U.S. 1080 (1989).   "The party seeking the exercise of jurisdiction in his favor must allege in his pleading the facts essential to show jurisdiction."   *U.S. ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1495 (10th Cir. 1995).   In determining whether a party has adequately presented facts sufficient to

establish jurisdiction, the court should look to the complaint's face, *see Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972), accepting the well-pleaded factual allegations as true, *see United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001), but ignoring conclusory allegations of jurisdiction, *see Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). On a jurisdictional motion, a court may also look at documents and evidence not contained in the pleadings. *See Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, 1296 (10th Cir. 2003), *cert. denied*, 542 U.S. 937 (2004).

      B.     <u>Federal Rule of Civil Procedure 12(b)(6)</u>.

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted), *cert. denied*, 558 U.S. 1148 (2010).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Factual allegations must be enough to raise a

right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  *See id.* at 570; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).   The Tenth Circuit has explained,

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570) (internal citations omitted).

## DISCUSSION

I.    Motion to Dismiss for Lack of Personal Jurisdiction.

Defendant MW moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  MW contends that the complaint does not allege that MW has any—let alone sufficient—minimum contacts with New Mexico to subject itself to the jurisdiction

11

of the Court.   [Doc. 11 at 5].   MW argues that the complaint does not allege that it transacted any business in the state or that it engaged in a tortious act within the state, as required by New Mexico's long-arm statute.   [*Id*.].   Plaintiff contends that the Court exercises specific jurisdiction over MW, and that MW's activities or contacts satisfy both New Mexico's three-part test to determine whether a court may exercise personal jurisdiction over a defendant as well as the constitutional due process standard for exercising personal jurisdiction.

The New Mexico test asks whether (1) the defendant committed an act or omission specifically set forth in the long-arm statute, (2) the plaintiff's cause of action arises out of the alleged acts or omissions, and (3) the defendant established sufficient minimum contacts with New Mexico to satisfy due process concerns.   *See Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54 (N.M. 2002) (citations omitted).   In applying this test, the analysis of whether the defendant transacted business or committed a tortious act within New Mexico merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns.   *See id.* at 54-55 (citations omitted); *see also id.* at 55 (holding that "[p]recedent exists in New Mexico establishing that the 'transaction of any business' element of the long-arm provision is sufficient to fulfill the due process standard of minimum contacts") (citations omitted); *id.* at 57 (holding that "[a]s with the transaction of business analysis, '[r]ather than engage in a technical analysis of whether [the defendant] committed a tortious act, we must equate the tortious act which the defendant is alleged to have committed with minimum contacts to determine if due process has been satisfied'") (citation omitted).

Plaintiff argues in its response to the motion to dismiss that MW engaged in the first and/or third acts enumerated in New Mexico's long-arm statute—namely, that MW either engaged in the transaction of business within the state or that MW engaged in the commission of a tortious act

12

within this state—and that this litigation arises out of these acts.   [Doc. 18 at 4].   Because the New Mexico courts have interpreted the state's long-arm statute as extending its personal jurisdiction as far as constitutionally permissible, it is not necessary for the Court to determine whether MW transacted business within New Mexico or engaged in a tortious act in New Mexico in any technical sense.   *See Tercero*, 48 P.3d at 55, 57; *F.D.I.C. v. Hiatt*, 872 P.2d 879, 881 (N.M. 1994).   When courts have construed a state's long-arm statute as being coextensive with the requirements of due process, the analysis of whether a defendant engaged in an act enumerated in the long-arm statute and whether that defendant had minimum contacts with the state "collapses into a single search for the outer limits of what due process permits."   *Id.* (quoting *Forsythe v. Overmyer*, 576 F.2d 779, 782 (9th Cir.), *cert. denied,* 439 U.S. 864 (1978)).

To satisfy the Constitution's due process standard, the defendant must have (1) sufficient "minimum contacts" with the forum state (2) such that subjecting the defendant to the court's jurisdiction will not offend traditional conceptions of fair play and substantial justice.   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).   The Court first considers whether Defendant MW has sufficient minimum contacts with New Mexico.

To establish a prima facie case that a defendant has sufficient minimum contacts with New Mexico under a specific jurisdiction theory, a plaintiff must show that (1) a defendant has "purposely avail[ed itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," and (2) that "the litigation results from alleged injuries that arise out of or relate to those activities."   *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1090-91 (10th Cir. 1998) (citing *Burger King Corp. v. Rudzewiczi*, 471 U.S. 462, 472 (1985)); *see also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996).   The actions by the defendant *itself* must have created the substantial connection with the

forum.  *See OMI Holdings*, 149 F.3d at 1090-91 (the injury must arise out of "'actions by the defendant *himself* that create a substantial connection with the forum state") (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 109 (1987)).   A "defendant's conduct and connection with the forum State [must be] such that [the defendant] should reasonably anticipate being haled into court there."   *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).

The central feature of minimum contacts is purposeful availment.  *See Sproul v. Rob & Charlies, Inc.*, 304 P.3d 18, 25 (N.M. Ct. App. 2012).   To determine "purposeful availment," a district court examines what activities a defendant directed toward New Mexico.  *See id.* (citing *Zavala v. El Paso County Hosp. Dist.*, 172 P.3d 173 (N.M. Ct. App. 2007)).   Plaintiff's complaint does not allege facts establishing purposeful availment.   The complaint does not contain facts indicating that Defendant MW engaged in *any* activities directed towards New Mexico.   Rather, the complaint only alleges that Defendant Osborn committed purposeful acts in New Mexico.

Plaintiff's only allegations specific to MW allege that "[a]t some point in time, not yet disclosed or discovered, Osborn made some or all the copied Branch files available to Mehaffy, and Mehaffy copied such files onto its own computer system," [Doc. 1, ¶ 33], that "Mehaffy willfully retained Branch's records, and refused to return them to Branch or the LLP," [*id.* ¶ 41], that "[a]s a result of . . . retaining Branch's files, . . . Mehaffy obtained privileged and confidential information from Branch's protected computers," [*id.* ¶ 42], that "Mehaffy obtained access to Branch files through the use of interstate commerce and communication," [*id.* ¶ 43], that "Mehaffy acquired the Branch files through improper means," [*id.* ¶ 48], that "at the time Mehaffy obtained the Branch files, it knew or had reason to know that Osborn had utilized improper means to acquire and retain them and had a duty to Branch to return the information," [*id.* ¶ 50], and that "Mehaffy retained Branch files, accessed those files, used those files, and refused to deliver them to the

14

LLP," [*id.* ¶ 54].[2]  Not one of these allegations suggest that the actions of MW occurred in the state of New Mexico.   The complaint alleges only that at some unknown time Osborn made the downloaded files available to MW with no indication that this occurred in New Mexico, that MW obtained and refused to return the information with no indication that these actions occurred in New Mexico, that MW obtained access to the information through the use of interstate commerce with no indication that the commerce occurred in New Mexico, and that MW accessed and used the downloaded files without any indication that this access or use occurred in New Mexico. Thus, Plaintiff has not alleged that MW transacted any business in New Mexico or otherwise availed itself of the privilege of conducting activities in New Mexico.

Moreover, even if the Court were to assume for purposes of deciding the question of personal jurisdiction that the complaint alleges facts against MW indicating that it committed a tort by passively receiving and retaining the information downloaded by Osborn, the complaint does not allege that this tort occurred in New Mexico.   To constitute purposeful availment of the privilege of conducting activities in the forum state, the tortious conduct alleged must occur in New Mexico.   *See Harrell v. Hayes*, 965 P.2d 933, 938 (N.M. Ct. App. 1998) (holding that even if the court were to assume the defendant committed a tort by passively retaining probate assets, the court would not find that the tort constituted purposeful availment because "the tortious conduct must occur in New Mexico in order to bring such conduct within the reach of this state's long-arm statute").   Likewise, the Court concludes that the passive acquisition, receipt, or retention of business information does not constitute "doing business" in New Mexico, where there are no allegations that the acquisition, receipt, or retention occurred in New Mexico.   *See id.* at 938

---

[2]   The Court notes that Plaintiff's complaint is verified and that a complaint may be "treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury."   *Hall v. Bellmont*, 935 F.2d 1106, 1111 (10th Cir. 1991).

(holding that a defendant does not purposely avail itself of the privilege of conducting business in New Mexico when the defendant receives and accepts delivery of assets outside of New Mexico).

When a defendant challenges a court's jurisdiction, the plaintiff bears the burden of establishing a prima facie case that jurisdiction exists.  *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted); *Doe v. Nat'l Med. Serv.*, 974 F.2d 143, 145 (10th Cir. 1992).   Plaintiff has failed to come forward with facts supporting MW's purposeful availment of the privilege of engaging in activities in the state of New Mexico.   Plaintiff, therefore, has failed to establish that MW has sufficient minimum contacts with New Mexico.   Because this failure alone renders the Court without personal jurisdiction over MW, the Court need not engage in the next step of the constitutional due process inquiry and determine whether the exercise of personal jurisdiction based on a defendant's minimum contacts is consistent with traditional notions of "fair play and substantial justice."   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).

Plaintiff argues that even if it has not presently alleged facts supporting the Court's personal jurisdiction over MW, the Court should allow Plaintiff to conduct discovery to gather the necessary facts.   [Doc. 18 at 5].   In support of this contention, Plaintiff cites authorities holding that where pertinent jurisdictional facts are in dispute, the court should allow discovery.   [*Id.* (citing *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 713 (9th Cir. 1992) ("Where pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed.") (quotation and citation omitted); 2 Moore's Federal Practice, § 12.31[7], at 12-59 to -60 (Matthew Bender 3d ed. 2012) ("Generally, the district court should allow discovery if the jurisdictional claim has a reasonable basis and it appears that pertinent facts may be uncovered.")].

The Tenth Circuit has held that generally, "'[w]hen a defendant moves to dismiss for lack

of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.'" *Health Grades, Inc. v. Decatur Memorial Hosp.*, No. 05-1445, 2006 WL 1704454, *3 (10th Cir. June 22, 2006) (quoting *Sizova v. Nat'l Institute of Standards & Technology*, 282 F.3d 1320, 1326 (10th Cir. 2002)). The Tenth Circuit has explained, however, that the district court has broad discretion in determining whether to permit jurisdictional discovery, and a refusal to grant discovery will constitute an abuse of discretion only if the denial results in prejudice to a litigant. *See id.*; *Sizova*, 282 F.3d at 1326 (citations omitted). Prejudice is present if either the pertinent jurisdictional facts are controverted or a more satisfactory showing of the facts is necessary. *See id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)); *Health Grades*, 2006 WL 1704454, at *3. A refusal to grant discovery is not an abuse of discretion when it is clear that further discovery will not reveal facts sufficient to confer jurisdiction. *See Wells Fargo*, 556 F.2d at 430 n.24 (citing *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)); *Budde*, 511 F.2d at 1035 (affirming district court's denial of jurisdictional discovery and stating that "[i]mplicit in the trial court's order . . . is a determination that further discovery would not demonstrate facts sufficient to constitute a basis for personal jurisdiction in New Mexico").

As a threshold matter, the Court notes that it is not required to recognize "a general request for discovery" included in a response to a Rule 12(b)(2) motion to dismiss. *World Wide Ass'n of Specialty Programs & Sch. v. Houlahan*, No. 04-4181, 2005 WL 1097321, *2 (10th Cir. May 10, 2005); *see also Sampson v. Delta Air Lines, Inc.*, No. 2:12-CV-244 TS, 2013 WL 6409865, at *5 (D. Utah Dec. 9, 2013). The Tenth Circuit has specifically held that a district court does not abuse its discretion in denying a request for jurisdictional discovery set forth in a response to a motion to dismiss when the plaintiff fails to file a formal supported motion. *See World Wide Ass'n*, 2005

17

WL 1097321, at *2 ("In the absence of an explicit, supported motion for discovery, this court cannot say that the district court abused its discretion in denying the request."). Plaintiff, therefore, was required to file an "explicit, supported motion for discovery," but instead buried its request in its response to the motion to dismiss. *Id.*; *see also Sampson*, 2013 WL 6409865, at *5. This failure alone is a sufficient ground for the Court to deny the request for jurisdictional discovery. *Cf. World Wide Ass'n*, 2005 WL 1097321, at *2.

The Court, however, also denies Plaintiff's request for jurisdictional discovery on the merits. Having reviewed the allegations in the complaint and the affidavit in opposition to the motion to dismiss, the Court concludes that it does not appear that further discovery would reveal facts sufficient to confer jurisdiction. Rather, Plaintiff's theory on which it bases its belief that it can demonstrate that MW purposely availed itself of the privilege of conducting activities in the forum state—namely, that Osborn was MW's agent and downloaded the information on MW's behalf—appears to be mere speculation. Indeed, Turner W. Branch's affidavit only attests that "I *believe* that discovery in this case *may* show that Mr. Osborn and MehaffyWeber entered into an agency relationship prior to Mr. Osborn's termination by the LLP whereby Mr. Osborn misappropriated Branch's confidential information on MehaffyWeber's behalf and at its direction." [Doc. 18-1, ¶ 7 (emphasis added)]. Courts repeatedly have denied requests for jurisdictional discovery when the complaint and supporting affidavits are based upon speculation alone and do not contain any other indication that additional discovery will reveal facts sufficient to establish personal jurisdiction. *See, e.g.*, *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (denying jurisdictional discovery where the plaintiffs stated only that they "'believe' that discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction" and explaining that "[t]his speculation does

18

not satisfy the requirement that they make 'the clearest showing' of actual and substantial prejudice"); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (holding that the district court did not abuse its discretion in denying jurisdictional discovery when the plaintiff's request was based on little more than a hunch that it might yield jurisdictionally relevant facts), *cert. denied*, 555 U.S. 1171 (2009); *FC Inv. Group LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1093-94 (D.C. Cir. 2008) (holding that a request for jurisdictional discovery may not be based on mere conjecture or speculation); *Carefirst, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (holding that "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery"). Thus, the Court also denies Plaintiff's request for jurisdictional discovery on this ground as well.

The Court further notes that Plaintiff has made no showing as to what specific jurisdictional discovery it would seek and how this discovery would support Plaintiff's agency theory and/or demonstrate that MW purposely availed itself of the forum state's laws. *Cf. Sampson*, 2013 WL 6409865, at *5 (holding that the plaintiff's request for jurisdictional was an "improper fishing expedition" because the plaintiff did not demonstrate how the discovery sought would support personal jurisdiction over the defendant). Instead, Plaintiff only attaches the affidavit of Turner W. Branch attesting that he does not know when or how MW came into possession of the information downloaded, but that he "believe[s]" that discovery "may" reveal facts sufficient to support personal jurisdiction. The Court already has held that this showing is mere conjecture and not sufficient to warrant discovery. That Mr. Branch's affidavit statements are speculative is further reinforced by the fact that Plaintiff has engaged in discovery in the Texas litigation regarding the time period during which Osborn accessed the computer, the manner in which he downloaded the information, and the purpose for which he did so, [Doc. 25 at 6, n.3],

19

and, despite this discovery, Plaintiff nonetheless has been unable to come forward with any facts to support its agency claim.  *Cf. Villar v. Crowley Maritime Corp*., 780 F. Supp. 1467 (S.D. Tex. 1992) (denying request for further discovery on personal jurisdiction in part because the plaintiffs "had ample opportunity to conduct discovery as to the forum non conveniens issue during the California . . . litigation," explaining that discovery did not reveal relevant jurisdictional facts, and reasoning that, "[w]hile the two issues are not absolutely identical, the forum non conveniens determination necessarily involves an inquiry as to the parties' activities in various forums," which is relevant to personal jurisdiction) (citing *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 507 F. Supp. 1128, 1137-38 (D. Nev. 1980) (holding that the requirement of reasonableness for the exercise of personal jurisdiction may be judged by standards analogous to those used to decide forum non conveniens motions)).  Thus, the Court denies Plaintiff's request for jurisdictional discovery for these reasons as well.

The Court does not believe that Plaintiff will suffer any prejudice by the Court's denial of its discovery request.  Prejudice is present if either the pertinent jurisdictional facts are controverted or a more satisfactory showing of the facts is necessary.  *See Sizova*, 282 F.3d at 1326 (citing *Wells Fargo*, 556 F.2d at 430 n.24); *Health Grades*, 2006 WL 1704454, at *3.  The Court concludes that neither of these circumstances is present here.  Plaintiff has not alleged *any* facts in support of its agency theory, and thus there are no facts available to dispute.  *Compare CVR Energy, Inc. v. Wachtell Lipton Rosen & Katz*, No. 13-CV-2547-JAR-TJJ, 2014 WL 782662 (D. Kan. Feb. 25, 2014) (allowing jurisdictional discovery because the Plaintiff "has alleged pertinent jurisdictional facts regarding Defendants' general transaction of business in Kansas, and those facts are controverted by Defendants").  Moreover, a more satisfactory showing of the facts is not necessary because plaintiff has not alleged facts that provide "a reasonable basis to believe

[that] the relevant additional facts may exist." *CVR Energy, Inc. v. Wachtell Lipton Rosen & Katz*, 2014 WL 782662 (D. Kan. Feb. 25, 2014) (granting jurisdictional discovery and holding that a more satisfactory showing of the facts appears necessary because the plaintiff's "alleged examples of [d]efendants' business transactions in Kansas show a reasonable basis to believe that relevant additional facts may exist"). Here, Plaintiff has made no factual allegations—plausible or otherwise—that provide the Court with a reasonable basis to believe that relevant facts regarding personal jurisdiction over MW may exist. Thus, the Court concludes that its decision to deny discovery will not prejudice Plaintiff.

II. <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>.

    A. <u>Computer Fraud and Abuse Act</u>.

Defendants argue in their opening briefs that the Court should dismiss the CFAA claim pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff has failed to allege facts indicating that the amount in controversy exceeds the $75,000 threshold necessary to establish that the Court has diversity jurisdiction over the claim pursuant to Section 1332. Plaintiff maintains that the Court should not dismiss the CFAA claim because it exercises federal question jurisdiction pursuant to Section 1331.

The Court already has dismissed Plaintiff's claims against Defendant MW on the ground that Plaintiff has failed to state a prima facie case that the Court exercises personal jurisdiction over MW. Thus, MW's motion to dismiss for lack of subject matter jurisdiction is moot and the Court therefore denies the motion as moot. The Court notes, however, that because MW raises the same arguments regarding subject matter jurisdiction that Osborn raises, and the relevant facts and law for both motions are the same, the Court's decisions regarding Osborn's motion to dismiss for lack of subject matter jurisdiction would be equally applicable to MW if MW were still a party

21

to this case.

The Court agrees with Plaintiff that Section 1331 of Title 28 grants it federal question jurisdiction over its CFAA claim.   A federal court exercises jurisdiction over a claim if it "arises under" federal law.  28 U.S.C. § 1331.  "A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotation marks and citation omitted).   Plaintiff's complaint clearly establishes that the federal statute CFAA creates its cause of action against Defendant Osborn.   Thus, the Court concludes that it exercises federal question jurisdiction over the CFAA claim pursuant to Section 1331.

To the extent Defendant Osborn maintains that the CFAA claim is subject to dismissal because Plaintiff has failed to satisfy the requirements for diversity jurisdiction pursuant to 28 U.S.C. Section 1332, the Court rejects this argument.   Once a plaintiff establishes that a court exercises federal question jurisdiction over a claim, the plaintiff need not demonstrate that the Court also exercises diversity jurisdiction over that claim.   Thus, to the extent Defendant Osborn moves to dismiss the CFAA claim for failure to satisfy the diversity of citizenship requirements contained in Section 1332, the Court denies that motion.

B.    New Mexico Trade Secrets Act.

Defendant Osborn asks this Court to dismiss Plaintiff's New Mexico Trade Secrets Act claim pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction over the claim. The Court may exercise subject matter jurisdiction over the NMTSA state claim on two possible grounds.   First, because the Court has held that it exercises federal question subject matter jurisdiction over the CFAA claim, the Court may exercise supplemental jurisdiction over the state

NMTSA claim, provided that the state claim forms part of the same case or controversy as the federal CFAA claim.  *See* 28 U.S.C. § 1367(a).  Second, even if the Court declines to exercise supplemental jurisdiction over the NMTSA state claim, if it has an independent basis of subject matter jurisdiction over the state claim—here, Plaintiff argues diversity of citizenship jurisdiction—the Court likewise has jurisdiction to entertain the state claim.

    1. <u>Supplemental Jurisdiction</u>.

   A "district court[] shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  *Id.*  The Court has held that it has original federal question subject matter jurisdiction over Plaintiff's CFAA claim pursuant to 28 U.S.C. Section 1331.  As such, the Court may exercise supplemental jurisdiction over Plaintiff's NMTSA claim, provided it forms part of the same case or controversy as the CFAA claim.  Because both claims arise out of the same set of facts, the Court holds that it has supplemental jurisdiction over the NMTSA claim.

   The Court, however, may decline to exercise supplemental jurisdiction over a state claim if the Court has dismissed all federal claims over which it has original jurisdiction.  *See id*. § 1367(c)(3).  The Tenth Circuit has emphasized, "[w]hen all federal claims have been dismissed, [a district] court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

   As discussed herein, the Court dismisses Plaintiff's federal CFAA claim for failure to state a claim upon which relief may be granted.  *See infra* § III.A.  Thus, no federal claim in this case is remaining.  In deciding whether to decline to exercise supplemental jurisdiction over Plaintiff's state NMTSA claim, the Court notes that federal court jurisdiction is intended to have a limited

reach and that 28 U.S.C. Section 1367(c)(3) expressly contemplates that courts may decline to exercise supplemental jurisdiction over cases in which all federal causes of action have been dismissed.   Plaintiff has pointed to no factor in this case, and the Court finds none, that merits the Court's exercise of supplemental jurisdiction over the state claim.   Accordingly, the Court declines to exercise its supplemental jurisdiction over the NMTSA claim.

2.     Diversity of Citizenship Jurisdiction.

That the Court declines to exercise supplemental jurisdiction over the state NMTSA claim, however, does not end the inquiry whether the Court has subject matter jurisdiction.   Plaintiff alleges that the Court has an independent basis of subject matter jurisdiction—namely, diversity of citizenship jurisdiction—over the claim.

Section 1332 of Title 28 grants district courts original jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."   28 U.S.C. § 1332(a).   Defendant Osborn maintains that the Court does not have diversity jurisdiction over the NMTSA claim because Plaintiff has not satisfied the amount in controversy or the complete diversity requirements.   The Court addresses each requirement in turn.

a.     Amount in Controversy.

The complaint alleges that Plaintiff has been damaged in an amount in excess of $75,000 by virtue of Defendant Osborn's actions.   [Doc. 1, ¶ 38].   Plaintiff argues that it has satisfied the amount in controversy requirement "[w]hether based on actual loss, unjust enrichment, or imposition of liability for a reasonably royalty for the unauthorized disclosure or use of [Plaintiff's] trade secrets."   [Doc. 20 at 8].   Defendant Osborn contends that Plaintiff has suffered no damages because it was not the owner of the alleged trade secrets.   [Doc. 13 at 12].   Osborn

24

also maintains that the complaint fails to allege plausible facts that establish that Plaintiff suffered a loss in excess of $75,000, because the complaint alleges that Plaintiff "does not know all details concerning the quantity and type of information taken from Branch by Osborn." [Doc. 27 at 5; Doc 1, ¶ 17].[3]

A district court should not, upon a defendant's challenge to federal subject matter jurisdiction based on a failure to satisfy the amount in controversy requirement, dismiss a case unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289; *see Gibson v. Jeffers*, 478 F.2d 216, 220 (10th Cir. 1973) ("Ordering dismissal of an action in federal district court must . . . be based on a legal certainty that the claim is for less than the jurisdictional amount.") (citations omitted); *see also Watson v. Blakenship*, 20 F.3d 383, 386 (10th Cir. 1994) (plaintiffs must show that "it does not appear to a legal certainty that they cannot recover [the jurisdictional amount]").

In support of its first argument that Plaintiff was not the owner of the information downloaded and therefore has suffered no damages, Defendant Osborn cites Federal Rule of Civil Procedure 17(a), which provides, "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). The Tenth Circuit has held that a district court must analyze who owns a substantive right of action under the laws of the state where the action arose. *See Am. Fidelity & Cas. Co. v. All Am. Bus Lines, Inc.*, 179 F.2d 7, 10-11 (10th Cir. 1949). Under New

---

[3]   Defendant Osborn also argues that Plaintiff has not alleged facts establishing damages in excess of $75,000, because the loss of the value of the information does not fall within the definition of "loss" under CFAA. [Doc. 13 at 14 ("Because . . . the 'value' of information is not a 'loss' within the meaning of the CFAA, . . . the complaint fails to satisfy the $75,000 threshold for diversity jurisdiction")]. This argument does not have merit. The question before the Court is whether it may exercise diversity jurisdiction over Plaintiff's state NMTSA claim. CFAA's definition of "loss" is irrelevant to this question.

Mexico law, a "real party in interest is 'determined by whether one is the owner of the right being enforced and is in a position to discharge the defendant from the liability being asserted in the suit.'" *L.R. Prop. Mgmt., Inc. v. Grebe*, 627 P.2d 864, 865 (N.M. 1981) (quoting *Jesko v. Stauffer Chem. Co.*, 558 P.2d 55, 59 (N.M. Ct. App. 1976)).

The complaint alleges plausible facts indicating that Plaintiff was the owner of the information downloaded.   For example, the complaint defines Plaintiff Turner W. Branch, P.A., the New Mexico entity, as "Branch" and alleges that "Osborn . . . had access to privileged and confidential documents that belonged to Branch," [Doc. 1, ¶ 13], that "Osborn copied and took with him privileged and confidential information belonging to Branch," [*id.* ¶ 15], that "Osborn copied and took at least 150 gigabytes of . . . information belonging to Branch," [*id.* ¶ 16], and that "the information stolen belongs to Branch," [*id.* ¶ 38].   In addition, the complaint acknowledges that the LLP is attempting to recover the information that Osborn downloaded in the Texas litigation and alleges that the LLP has a duty to recover the information because Osborn gained access to the information by reason of his employment with the LLP.   [*Id.* ¶ 38].   The complaint nonetheless asserts that "the information stolen belongs to [Plaintiff] and it is [Plaintiff] that has been damaged . . . by reason of the theft."   [*Id.*].   These allegations contain plausible facts, if true, *see Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994), which establish that Plaintiff was the owner of the information downloaded.   The Court is obligated to view the allegations in the complaint in the light most favorable to Plaintiff and to draw all reasonable inferences in Plaintiff's favor.   *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted), *cert. denied*, 558 U.S. 1148 (2010). Under this standard, the Court cannot ignore the allegations in the complaint indicating that Plaintiff owned the information downloaded.

Defendant points to the Texas litigation and the LLC's claim of ownership in attempt to dispute the complaint's allegations that Plaintiff owned the information.   On a jurisdictional motion, a court may examine look beyond the pleadings and consider other evidence and documents.   *See Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, 1296 (10th Cir. 2003) (explaining that a court may look at documents and evidence not contained in the pleadings when deciding a jurisdictional motion to dismiss), *cert. denied*, 542 U.S. 937 (2004).   Defendant Osborn urges the Court to take judicial notice of papers the LLC filed in the Texas litigation in which the LLC claims ownership of the information Osborn downloaded.   Even if the Court were to take judicial notice that the LLP claimed ownership of the information downloaded in the Texas litigation, *cf. Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (holding that "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record"), *cert. denied*, 531 U.S. 1161 (2001); *MER, LLC v. Comerica Bank*, No. 12-CV-02116-RPM, 2013 WL 539747, *1 (D. Colo. Feb. 13, 2013) (holding that the court may take judicial notice of documents submitted in support of a Rule 12(b)(1) challenge) (citation omitted), and the Court considered this information for purposes of ruling on the 12(b)(1) motion to dismiss, the Court's conclusion that the complaint contains allegations indicating that Plaintiff owns the information would remain unchanged.   That the LLP claimed that it also owned the information suggests—at best for Defendants—only that both Plaintiff and the LLP co-owned the information.[4]   Because Plaintiff has alleged that it owned the information downloaded, and co-ownership of the information with the LLP would not negate Plaintiff's damages, the Court rejects Defendant Osborn's argument that Plaintiff has suffered no damages and therefore cannot

---

[4]   Or, alternatively, at best for Plaintiff, that the LLC in the Texas litigation may be seeking the information because it is acting pursuant to its asserted duty to recover the information its employee stole.   [Doc. 1, ¶ 38].

satisfy the amount in controversy requirement.

Defendant Osborn also argues that Plaintiff cannot satisfy the amount in controversy requirement because the complaint alleges that Plaintiff "does not know all details concerning the quantity and type of information taken from Branch by Osborn."  [Doc 1, ¶ 17].  Plaintiff, however, does not allege, as Osborn argues, that "it does not know what is on the flash drive," [Doc. 27 at 5], for not knowing "all" of the details is different from not knowing "any" of the details.  Moreover, the complaint also contains additional allegations indicating that the information Osborn downloaded contained "privileged and confidential information," [Doc. 1, ¶ 15], that the information "believed to have been misappropriated by Osborn includes materials that effectively constitute a blueprint for developing and pursuing a plaintiffs' mass tort practice," [*id.* ¶ 21], and that Osborn "obtain[ed] Branch's confidential, privileged and trade secret information, thereby obtaining Branch's knowledge, procedures and forms for the conduct of mass tort litigation," [*id.* ¶ 53].  Admittedly, some of the complaint's allegations describing the nature of the information downloaded are prefaced with the language "believed to have been misappropriated."  [*Id.* ¶¶ 21-25].  The Court, however, must construe the allegations in the light most favorable to Plaintiff and draw all reasonable inferences in Plaintiff's favor.  *See Tellabs*, 551 U.S. at 322; *Smith*, 561 F.3d at 1098.  Consistent with this obligation, the Court cannot conclude that it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  *St. Paul Indemnity Co.*, 303 U.S. at 289; *see Gibson*, 478 F.2d at 220.  Thus, the Court holds that Plaintiff has alleged facts that just cross the line from conceivable to plausible.

b.     Complete Diversity.

Under Section 1332, "the citizenship of all defendants must be different from the

citizenship of all plaintiffs." *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008). Defendant Osborn argues that the Court lacks diversity jurisdiction because the LLP—as owner of the information downloaded—is the real party in interest, and joinder of the LLP to this action would destroy complete diversity.   [Doc. 13 at 13; Doc. 14 at 13].   Plaintiff maintains that it is the real party in interest, that the LLC undertook its actions of moving for a restraining order in the Texas litigation because "[o]nly the LLP (and not Branch, as it is not a party to the Texas proceeding), could move for a temporary restraining order for return of the information," and that Branch "authorized" the LLP to do so.   [Doc. 20 at 6-7].   While Plaintiff contends that for these reasons the Court should reject Osborn's argument that Plaintiff is not the proper party to this lawsuit, Plaintiff concedes that if the Court joins the LLC to this action, complete diversity would be destroyed.   [*Id.* at 7 & n.2].

Defendant Osborn's argument that the LLP is the owner of the information, that the LLP must be joined to this lawsuit, and that this joinder would destroy complete diversity, is premised upon the Court's consideration of evidence outside of the four corners of the complaint.   Plaintiff objects to the Court's consideration of this external evidence, citing case law for the proposition that a court generally cannot consider evidence outside the complaint without converting the motion to dismiss to a motion for summary judgment.   [Doc. 20 at 3].

Defendant Osborn maintains that the Court may take judicial notice of the materials they attach from the Texas proceeding and consider these materials in ruling upon their Rule 12(b)(1) motions to dismiss.   The Court agrees.   *See MER,* 2013 WL 539747, *1 (D. Colo. Feb. 13, 2013) (holding that the court may take judicial notice of documents submitted in support of a Rule 12(b)(1) challenge) (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)); *see also Gibson*, 211 F.3d at 568 (holding that "the court is permitted to take

judicial notice of its own files and records, as well as facts which are a matter of public record");

*St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979)

(holding that the court may "take judicial notice, whether requested or not[,] of its own records and

files, and facts which are part of its public records" and explaining that "[j]udicial notice is

particularly applicable to the court's own records of prior litigation closely related to the case

before it") (citations omitted).   It is well established that a court may consider matters beyond the

complaint when ruling upon a motion to dismiss under Rule 12(b)(1) without converting the

motion to a motion for summary judgment.   *See, e.g.*, *MER*, 2013 WL 539747, at *1 (taking

judicial notice of documents submitted in support of a Rule 12(b)(1) challenge because "[u]nlike

the strict limitations under 12(b)(6) against considering matters outside the complaint, a 12(b)(1)

motion . . . can include references to evidence extraneous to the complaint without converting it to

a Rule 56 motion") (citing *Wheeler*, 825 F.2d at 259 n.5).   The Tenth Circuit has stated, "When a

party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide

discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve

disputed jurisdictional facts. . . .   In such instances, a court's reference to evidence outside the

pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary

judgment].'"   *Davis*, 343 F.3d at 1296 (quoting *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995)).

Admittedly, an exception to this rule applies when "'resolution of the jurisdictional

question is intertwined with the merits of the case,'" and under these circumstances "it is necessary

to 'convert a Rule 12(b)(1) motion . . . into a [motion under] Rule 12(b)(6) . . . or . . . Rule

56.'"   *Id.* (quoting *Holt*, 46 F.3d at 1003).   A jurisdictional question is intertwined with the merits

when "subject matter jurisdiction is dependent on the same statute which provides the substantive

claim in the case."   *Holt*, 46 F.3d at 1003; *see Wildearth Guardians v. Public Serv. Co.*, 698 F.

Supp. 2d 1259, 1263 (D. Colo. 2010).  Here, however, subject matter jurisdiction is dependent not

on the NMTSA but rather is dependent on whether complete diversity is destroyed because the

LLC is the real party in interest and must be joined to this case.  Because the issues are not

intertwined, the Court may consider the materials attached by Defendant Osborn and need not

convert the motion.

Defendant Osborn contends that the pleadings from the Texas litigation demonstrate that

the LLC, and not Plaintiff, is the real party in interest, because in those documents, the LLC

maintains that it owns the information downloaded by Osborn.  Osborn represents that it will

move to join the LLC to this litigation if the Court denies its motion to dismiss and that this joinder

will destroy complete diversity.  [Doc. 26 at 5].  Osborn thus argues that the Court does not—or,

more accurately, will not—have diversity subject matter jurisdiction over this case.  [Doc. 26 at 5

(explaining that "[a]t this time, the Court can conclude that if it does not lack subject matter

diversity jurisdiction now, it soon will, because the LLP's joinder will destroy diversity

jurisdiction.")].

Defendant Osborn's contentions are problematic for several reasons.  First, although the

Court may take judicial notice of the pleadings from the Texas litigation, it may not take judicial

notice of the truth of the facts contained in the pleadings.  *See Arocho v. Nafziger*, No. 09-1095,

2010 WL 681679, at *7 n.12 (10th Cir. Mar. 1, 2010) (explaining that although a court "may take

judicial notice of court documents and matters of public record," "a party's evidentiary materials

are not 'court documents' that may be judicially noticed as true" and that "'a court cannot notice

pleadings or testimony as true simply because these statements are filed with the court'" or

"'because someone put it in the court's files'") (citing 21B Charles A. Wright & Kenneth W.

Graham, Jr., *Federal Practice & Procedure* § 5106.4 at 232, 234 (2d ed. 2005)); *Gilchrist v. Citty*,

Nos. 02-6352, 02-6353, 2003 WL 21465500, *3 (10th Cir. June 25, 2003) (holding that the court "may take judicial notice of the existence of the opinions of other courts but not the truth of the facts recited therein") (citations omitted); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (explaining that judicially-noticed court "'documents may only be considered to show their contents, not to prove the truth of matters asserted therein'") (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)), *cert. denied*, 549 U.S. 1209 (2007); *Wildearth Guardians*, 698 F. Supp. 2d at 1263 (holding that a court's files and records, as well as facts which are a matter of public record, "'may only be considered to show their contents, not to prove the truth of matters asserted therein'") (quoting *Oxford Asset Mgmt.*, 297 F.3d at 1188).   Thus, the Court cannot conclude from the documents Defendant Osborn attaches that the LLC is the real party in interest, but only that the pleadings were filed and that in those pleadings the LLC *claimed* that it owned the information.

Second, even if the LLC is the real party in interest, or is one of the two real parties in interest (*i.e.*, because Plaintiff and the LLC co-own the information), the subsequent joinder of a non-diverse party does not destroy complete diversity unless "the later-joined non-diverse party was indispensable to the action at the time it was commenced."   *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1096 (10th Cir. 2003).   Whether a party is "indispensable" is determined by considering the factors set forth in Federal Rule of Civil Procedure 19.   *See id.* (citations omitted).   Rule 19 provides "a mechanism for joining, where feasible, parties necessary for the just adjudication of a dispute and, where it is not feasible to join such parties, for dismissing the case."   *Id.* at 1097 n.8.

A Rule 19 analysis has three parts.   *See Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001).   First, the Court must determine whether the absent person is

"necessary."   *Id.*   A person is necessary if "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."   *Id.* (citing Fed. R. Civ. P. 19(a)) (additional citation omitted).   Second, if the absent person is necessary, the court must then determine whether joinder is "feasible."   *Id.* (citing Fed. R. Civ. P. 19(a)-(b)).   Joinder is not feasible when, for example, "a party is deemed necessary under rule 19, but the party's introduction to the litigation would destroy complete diversity and thereby undermine the court's subject matter jurisdiction."   *Certain Underwriters at Lloyd's, London, Subscribing To Policy Number 501/NM03ACMB v. Nance*, No. 04-00937 JB/WDS, 2006 WL 4109676, *5 (D.N.M. Aug. 23, 2006 (citing *Sac & Fox Nation v. Pierce*, 213 F.3d 566, 581 n.11 (10th Cir. 2000) (noting that joinder of a necessary party was feasible because it would not destroy the court's subject matter jurisdiction)).   Third, if joinder is not feasible, the court must decide whether the absent person is "indispensable," *i.e.,* whether in "equity and good conscience" the action can continue in his absence.   *See* Fed. R. Civ. P. 19(b); *Norton*, 248 F.3d at 997.   The factors the court considers include

> (1)   the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2)   the extent to which any prejudice could be lessened or avoided by:
>
> > (A)   protective provisions in the judgment;
> > (B)   shaping the relief; or
> > (C)   other measures;

> (3)     whether a judgment rendered in the person's absence would
>         be adequate; and
>
> (4)     whether the plaintiff would have an adequate remedy if the
>         action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).   If the party is indispensable, the suit must be dismissed.   *See Rishell v. Jane Phillips Episcopal Mem. Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996), *cert. denied*, 520 U.S. 1166 (1997).

While the Tenth Circuit has held that the subsequent joinder of a non-diverse party will destroy complete diversity if the later-joined, non-diverse party was indispensable to the action at the time it was commenced, *see Salt Lake Tribune*, 320 F.3d at 1096, Defendant Osborn has not yet moved to join the LLC to this litigation.   Rather, Defendant Osborn has indicated only that if the Court denies its motion to dismiss, it will move to join the LLC as a party.   Osborn, however, cites no case law in support of the proposition that a court should dismiss a complaint because the joinder of a defendant—which has not occurred yet—will destroy complete diversity.   To the contrary, Defendant Osborn's argument seemingly recognizes that complete diversity is present now and that only at some point in the future will it be lacking.   [Doc. 26 at 5 (explaining that "[a]t this time, the Court can conclude that if it does not lack subject matter diversity jurisdiction now, it soon will, because the LLP's joinder will destroy diversity jurisdiction.")].

The Court concludes that at this stage in the proceeding complete diversity exists and that the Court may continue to exercise jurisdiction pursuant to Section 1332 over the NMTSA claims. *If* Defendant Osborn moves to join the LLC, and *if* the Court concludes that (after weighing the Rule 19(b) factors) the LLC was indispensable to the action at the time Plaintiff filed its complaint, the Court will—at that time—be deprived of its diversity subject matter jurisdiction.   Since

neither of these conditions has as of yet occurred, the Court denies Osborn's motion to dismiss the NMTSA claims.

III.     <u>Motion to Dismiss for Failure to State a Claim for Relief</u>.

In the alternative to seeking dismissal on a Rule 12(b)(1) jurisdictional basis, Defendant Osborn asks the Court to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.   Osborn argues that dismissal of the CFAA claim is appropriate because Plaintiff has failed to allege plausible facts establishing that it has suffered a "loss" in excess of the $5,000 jurisdictional threshold prescribed in the statute.[5]   Osborn also argues that dismissal of the NMTSA claim is proper because Plaintiff has failed to allege facts demonstrating that the information downloaded by Osborn constitutes a "trade secret" within the meaning of the Act.

A.     <u>Computer Fraud and Abuse Act Claim</u>.

The CFAA is a criminal statute, but it also provides for a civil right of action.  *See* 18 U.S.C. § 1030(g).   Plaintiff seeks to maintain a civil action against Defendant Osborn, alleging that Osborn violated Sections 1030(a)(2)(C) and (a)(4) of the statute.[6]   Section 1030(g) of CFAA

---

[5]   Defendant Osborn also contends that the Court should dismiss Plaintiff's CFAA claim pursuant to Rule 12(b)(6) because Plaintiff has failed to allege plausible facts indicating that Osborn accessed the computer "without authorization" or that Osborn "exceed[ed] authorized access." Because the Court grants the motions to dismiss the CFAA claim on the ground that Osborn failed to allege facts demonstrating that he satisfied CFAA's $5,000 jurisdictional threshold, the Court declines to consider Osborn's additional arguments.

[6]   Under Section 1030(a)(2)(C), "[w]hoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer if the conduct involved an interstate or foreign communication" may be punished.  *Id.* § 1030(a)(2)(C).   Section 1030(a)(4) prohibits accessing a protected computer without authorization "knowingly and with intent to defraud" and thereby "obtain[ing] anything of value."  *Id.* §1030(a)(4).

provides that a plaintiff may bring a civil action under Sections 1030(a)(2)(C) and (a)(4) only if the wrongful conduct alleged involves one of the factors set forth in clause (I), (II), (III), (IV) or (V) of Section 1030(c)(4)(A)(i).  *See id.* § 1030(g) ("[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief" provided that "the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)").  Plaintiff contends that it has satisfied the factor in the first subclause by alleging facts establishing a "loss . . . during any 1-year period . . . aggregating at least $5,000 in value."  *Id.* § 1030(c)(4)(A)(i).[7]  The "loss" necessary to satisfy the $5,000 jurisdictional threshold to maintain a civil action is defined in Section 1030(e)(11) of CFAA as follows:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

*Id.* § 1030(e)(11).

Defendant Osborn moves for dismissal of Plaintiff's CFAA claim on the ground that Plaintiff has failed to allege plausible facts indicating that it suffered a "loss" that satisfies the $5,000 jurisdictional threshold set forth in Section 1030(c)(4)(A)(i).  Specifically, Osborn contends that the costs alleged by Plaintiff do not constitute a "loss" because the complaint fails to allege that the costs were incurred as a result of an "interruption in service," and because attorneys' fees incurred to investigate, prepare, and file a CFAA lawsuit do not constitute a covered "loss."

---

[7]  Prior to September 26, 2008, the $5,000 jurisdictional threshold was set forth in Section 1030(a)(5)(B)(i).  The cases cited herein that were decided prior to September 26, 2008, therefore, refer to Section 1030(a)(5)(B)(i) as containing the jurisdictional threshold and not Section 1030(c)(4)(A)(i).

[Doc. 14 at 22-23].   Plaintiff argues that it suffered a covered "loss" because it lost revenue due to unfair competition and because courts have held that "vague" allegations of loss are sufficient to survive a motion to dismiss.   The Court considers each of these arguments in turn.

The Court rejects Osborn's contention that the CFAA claim must necessarily fail because the complaint does not allege facts indicating that Plaintiff's loss was due to an "interruption of service."   Section 1030(e)(11) defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, *and* any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."   18 U.S.C. § 1030(e)(11) (emphasis added).   This definition clearly contains two clauses, and only the latter clause requires that the loss occur because of an "interruption of service."   *Id.*   Consistent with the plain language of the statute, courts repeatedly have held that the alleged loss need only be due to an interruption of service if the plaintiff seeks to demonstrate "loss" by satisfying the second clause of the statutory definition of "loss."   *See, e.g.*, *Ass'n Voice, Inc. v. AtHomeNet, Inc.*, No. 10-CV-00109-CMA-MEH, 2011 WL 63508, *7 (D. Colo. Jan. 6, 2011) (holding that "[o]nly those costs in the second half of the [CFAA's] definition [of "loss"] need to relate to an interruption of service"); *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026, 1036 (N.D. Ill. 2008) (noting that courts have held that "costs incurred to assess and repair damage" are recoverable "regardless of whether there is an interruption of service").   The Court therefore declines to dismiss Plaintiff's CFAA claim because the complaint fails to allege facts indicating that it suffered "loss" due to an "interruption of service."

While the Court is not persuaded by Defendant Osborn's first argument, the Court concludes that his second argument is compelling.   Osborn contends that "attorneys' fees

37

incurred to investigate a potential claim against Osborn and MW and to prepare and file this lawsuit are not a [statutorily covered] 'loss,'" and that Plaintiff therefore has not satisfied CFAA's statutory minimum of $5,000.  [Doc. 14 at 24 (citing *Wilson v. Moreau*, 440 F. Supp. 2d 81, 109-10 (D.R.I. 2006) ("[T]he costs of litigation cannot be counted towards the $5,000 threshold")].

Courts consistently have held that costs not related to computer impairment or computer damages are not compensable "loss" sufficient to satisfy the jurisdiction threshold contained in Section 1030(c)(4)(A)(i) of CFAA.  *See Farmers Ins. Exchange v. Steel Ins. Agency, Inc.*, No. 2:13-CV-00784-MCE, 2013 WL 6070488, *11 (E.D. Cal. Nov. 14, 2013) (quoting *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009) (citing numerous cases reaching the same conclusion)); *see, e.g.*, *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 U.S. Dist. LEXIS 134886, *69 (E.D. Pa. Sept. 19, 2012) (explaining that "[c]ourts have held that, to fall within [CFAA's] definition, the alleged 'loss' must be related to the impairment or damage to a computer or computer system") (citations omitted).  These courts conclude that "loss" is limited to any remedial costs of investigating the computer for damage and remedying the damage or any costs incurred, including lost revenue due to an interruption of service, because the computer cannot function while or until repairs are made.  *See Koch Indus., Inc. v. Does*, No. 2:10CV1275DAK, 2011 WL 1775765, *8 (D. Utah May 9, 2011) (explaining that "loss under the CFAA 'has consistently meant a cost of investigating or remedying damage to a computer or a cost incurred because the computer's service was interrupted,'") (quoting *Nexans Wires, S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004), *aff'd,* No. 05-3820-CV, 2006 WL 328292 (2d Cir. Feb. 13, 2006); *Am. Ins. Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 772 (N.D. Ohio 2008)) (additional citation omitted); *Wilson v. Moreau*, 440 F. Supp. 2d 81, 109-10 (D.R.I. 2006)

(explaining that "there is nothing to suggest that the 'loss' or the costs can be unrelated to the computer") (citing *Nexans*, 319 F. Supp. 2d at 471), *aff'd*, 492 F.3d 50 (1st Cir. 2007); *Sealord Holdings, Inc. v. Radler*, No. Civ. A. 11-6125, 2012 WL 707075, *15-16 (E.D. Pa. Mar. 6, 2012) (explaining that "[a] compensable 'loss' under the CFAA[] is a loss which is in some way related to functionality of the protected computer at issue," and that "[e]ither the loss is the cost of remedial measures taken to investigate or repair the damage to the computer, or the loss is the amount of lost revenue resulting from a plaintiff's inability to utilize the computer while it was inoperable because of a defendant's misfeasance"); *Nexans Wires S.A.*, 319 F. Supp. 2d at 474, 476-77 (explaining that the definition of "loss" requires costs incurred to be related to the computer).   "On the other hand, a claim for future lost revenue due to the dissemination of trade secrets"—or for some other reason unrelated to an interruption of service—"does not qualify as a 'loss' under the CFAA."   *Synthes*, 2012 U.S. Dist. LEXIS 134886, at *70 (citation omitted); *see Koch*, 2011 WL 1775765, at *8 (explaining that "loss" under CFAA does not include monetary loss "because of the way the information was later used," for "'[t]he CFAA does not contemplate consequential damages . . . unrelated to harm to the computer itself'") (quoting *Nexans Wires*, 319 F. Supp. 2d at 475); *Nexans*, 319 F. Supp. 2d at 477 (holding that a decrease in revenue due to a lost business opportunity, and not an interruption of service, does not constitute a "loss" covered by the statute, and therefore that travel expenses executives incurred to discuss the competitive harm resulting from the defendant's actions do not constitute a covered "loss"); *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238 252 n.12 (S.D.N.Y. 2000) (holding that a reduction in revenue due to lost business and goodwill does not count towards the $5,000 statutory threshold because the loss did not result from an interruption of service), *aff'd on other grounds*, 356 F.3d 393, 440 n.63 (2d Cir. 2004).

The Court concludes that the "loss" alleged in the complaint arises from attorneys investigating Plaintiff's CFAA claims and prosecuting this case and not from damage to the computer, remedying damage to the computer, incurring other remedial costs of investigating the computer for damage, or incurring lost revenue because the computer cannot function while or until repairs are made.   *Cf. Koch Indus.*, 2011 WL 1775765, *8.   The complaint alleges only that "Branch has been forced to retain, interact with and pay attorneys to investigate defendants' acts and to prosecute this action and has, for these reason[s] alone, suffered damages in excess of the statutory minimum of $5,000."   [Doc. 1, ¶ 45].[8]  Plaintiff provides no additional facts regarding the nature of the attorneys' investigation into Defendant Osborn's actions.

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.   *See Twombly*, 550 U.S. at 570; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010).   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).   The allegation that Plaintiff "has been forced to retain, interact with and pay attorneys to investigate defendants' acts and to prosecute this action," [Doc. 1, ¶ 45],

---

[8]   The complaint also alleges, but only in the context of Plaintiff's NMTSA claim, that "Branch has been damaged . . . by the investigative and remedial actions required in response to the discovered misappropriations."   [*Id.* ¶ 52].   Even if the Court were to construe this allegation as relevant to Plaintiff's CFAA claim, despite the clear language in the complaint limiting that allegation to the NMTSA claim, the Court would hold that the allegation is conclusory and is not supported by plausible facts sufficient to bring Plaintiff's costs incurred within CFAA's definition of "loss."   Plaintiff alleges only that its actions were "investigative" and "remedial" but provides no plausible facts describing what investigative or remedial actions it took or how these actions were related to the computer from which Osborn downloaded the information.   Thus, the Court is not persuaded that this allegation is sufficient to nudge Plaintiff's claims across the line from conceivable to plausible.   *Cf. Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

does not allow the Court to infer that the attorneys' investigation was related to damage to the computer. *Cf. Koch Indus.*, 2011 WL 1775765, *8. Rather, the allegation suggests that the attorneys were hired to investigate and prosecute this CFAA case. Plaintiff therefore has not "'nudged [its] claims across the line from conceivable to plausible.'" *Robbins*, 519 F.3d at 1247 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal citations omitted). Therefore, the Court holds that Plaintiff has not alleged facts sufficient to establish that it suffered a "loss" within the meaning of CFAA and to withstand a motion to dismiss for failure to state a claim for relief.

The Court's conclusion is consistent with the decisions of other courts holding that attorneys' fees and litigation costs incurred in investigating and prosecuting a CFAA claim are not a statutorily covered "loss." *See, e.g.*, *Wilson*, 440 F. Supp. 2d at 110 (holding that the costs of litigation cannot be counted towards the $5,000 statutory threshold and that the loss alleged must arise from damage to the computer and explaining that the plaintiffs had "suffered no economic harm," "their ability to conduct their business was not . . . impaired," "[n]o remedial measures were required to repair their computer capabilities," and their "litigation expenses [were] not directly attributable to Defendants' [actions]"); *Brooks v. AM Resorts, LLC*, 954 F. Supp. 2d 331, 338 (E.D. Pa. 2013) (holding "litigation costs are not a compensable loss under the CFAA because they are not related to investigating or remedying damage to the computer") (citations omitted); *Mintel Int'l Group, Ltd. v. Neergheen*, No. 08-CV-3939, 2010 WL 145786, *10 (N.D. Ill. Jan. 12, 2010) (holding that although costs incurred in retaining an expert to assist with civil litigation may be a "legitimate business concern, it does not transform any harms allegedly suffered by [the plaintiff] into 'losses' under the CFAA" and that "[t]he alleged loss must relate to the investigation or repair of a computer or computer system following a violation that caused impairment or

41

unavailability of data or interruption of service" ).   In these cases, as here, the plaintiffs argued that attorneys' fees constituted a "loss," and the courts rejected the argument on the ground that litigation costs are not related to investigating or remedying damage to a computer.

This case also is distinguishable from cases in which courts have allowed plaintiffs to count attorneys' fees incurred towards the jurisdictional threshold.   Attorneys' fees may constitute a covered "loss," but only when they are "incurred responding to the actual CFAA violation to place the plaintiff in [its] *ex ante* position."   *NCMIC Finance Corp. v. Artino*, 638 F. Supp. 2d 1042, 1065-66 (S.D. Iowa 2009); *see also United States v. Nosal*, No. CR-08-0237 EMC, 2014 WL 121519, *6 (N.D. Cal. Jan. 13, 2014) (implicitly recognizing that litigation costs and attorneys' fees incurred from "responding directly to an offense" constitute a covered "loss," but explaining that, as "a victim's actions . . . shift away from responding directly to an offense and toward building a civil case against the offender," these attorneys' fees will not constitute a covered "loss") (citations omitted); *Paradigm Alliance, Inc. v. Celeritas Technologies, LLC*, 722 F. Supp. 2d 1250, 1269 (D. Kan. 2010) (holding that fees incurred to retain an expert constitute a covered "loss" when the evidence shows that the expert fees were incurred "to investigate [the defendant's] attempted hacking [and] to determine whether any damage resulted," and not to support litigation of the CFAA claim).

In *NCMIC Finance Corporation v. Artino*, for example, the Southern District of Iowa held that attorneys' fees incurred to survey federal and state laws to determine whether the plaintiff had to report that the defendant had accessed the plaintiff's computer system and obtained a spreadsheet containing customers' social security numbers fell within CFAA's definition of "loss."  638 F. Supp. 2d at 1065.  These attorneys' fees, however, were clearly incurred as a remedial measure to respond to the defendant's CFAA violation.   As the *NCMIC* court explained,

"If [the defendant] did not use [the plaintiff's] customer spreadsheet in an unauthorized manner, [the plaintiff] would not have been required to respond to the improper use of Social Security numbers by incurring attorneys' fees." *Id.* The *NCMIC* court also distinguished the attorneys' fees at issue from fees incurred prosecuting a CFAA action. The *NCMIC* court held that while "attorneys' fees in prosecuting a CFAA action do not count toward the $5000 statutory threshold, . . . attorneys' fees incurred responding to the actual CFAA violation to place the plaintiff in [its] *ex ante* position are permissible as costs." *Id.* at 1065-66 (citations omitted). Unlike the fees incurred in *NCMIC*, the allegations in the complaint here indicate that the attorneys' fees at issue fall within the former category of fees incurred prosecuting a CFAA action and do not support the conclusion that the fees were incurred responding to the actual CFAA violation.

Having agreed with Defendant and held that Plaintiff's allegations of attorneys' fees incurred are insufficient to establish a covered "loss" under the CFAA, the Court next examines Plaintiff's arguments in opposition to the 12(b)(6) motion to dismiss the CFAA claim. Plaintiff maintains that it has alleged facts sufficient to establish a "loss" because "it may have suffered lost revenue as a result of Obsorn's actions." [Doc. 20 at 18]. In support of this argument, Plaintiff points to its allegations in the complaint indicating that prior to Defendant Osborn's downloading of the information concerning Plaintiff's mass tort claims onto the flash drive, Defendant MW did not represent plaintiffs in mass tort litigation, that the information downloaded provides a "blueprint for developing and pursuing a plaintiffs' mass tort practice," that the information downloaded "affords [Plaintiff] a competitive advantage in the marketplace," and that "the unauthorized use or disclosure [of the downloaded information] by others . . . damages [Plaintiff]." [*Id.* (citing Doc. 1, ¶¶ 12, 20-25)].

The Court concludes that to the extent these allegations suggest that Plaintiff lost revenue

43

due to unfair competition, lost revenue of this nature does not satisfy the statutory definition of a covered "loss."   The second clause of Section 1030(e)(11) defines "loss" as "any revenue lost, cost incurred, or other consequential damages incurred *because of interruption of service*."   18 U.S.C. § 1030(e)(11) (emphasis added).   Plaintiff's alleged loss of its competitive advantage in the marketplace does not arise from an "interruption in service" resulting from the damage to the computer, but rather arises from "the way the information [misappropriated] was later used." *Koch Indus.* , 2011 WL 1775765, *8 (explaining that "loss under the CFAA 'has consistently meant a cost of investigating or remedying damage to a computer or a cost incurred because the computer's service was interrupted,'" and not monetary loss "because of the way the information was later used").   Lost revenues due to the unfair business competition resulting from the way the hacked confidential information subsequently was used—and not from the interruption in service—do not count towards the "loss" requirement.   *See Nexans*, 319 F. Supp. 2d at 477 (explaining that plaintiffs were not alleging a loss due to an interruption of service but rather a loss "because of the way the information [misappropriated] was later used by defendants" and holding that a lost business opportunity, such as that alleged by plaintiffs, does not constitute a "loss" covered by the statute); *Register.com*, 126 F. Supp. 2d at 252 n.12 (holding that a loss because of a defendant's "end use" of information—*i.e.*, unfairly competing with plaintiffs and causing them to lose business and goodwill—did not count towards the $5,000 statutory threshold because the loss did not result from the "impairment or unavailability of data or systems," and explaining that "[h]ow [a defendant] uses the . . . data, once extracted, has no bearing on whether [the defendant] has impaired the availability or integrity of [the plaintiff's] data or computer systems in extracting it").   To the extent Plaintiff has alleged lost revenue due to its competitors gaining an unfair business advantage, this type of loss is not due to an interruption of service and is therefore too far

removed from computer damage to count towards the jurisdictional threshold.

The Court is not persuaded to hold otherwise by Plaintiff's citation to *Frees, Inc. v. McMillian*, No. 05-1979, 2007 U.S. Dist. LEXIS 57211, *14 (W.D. La. Aug. 6, 2007).   Plaintiff quotes the *Frees* court's holding that, "[w]hen a defendant copies unauthorized data to gain a competitive edge [in violation of the CFAA], it makes no sense to limit the plaintiff's recovery when the lost revenue is a direct result of defendant's misconduct," in support of its argument that its allegations regarding lost revenue should be sufficient to constitute a covered "loss."   [Doc. 20 at 18 (quoting *Frees*, 2007 U.S. Dist. LEXIS 57211, *14)].   The district court in *Frees*, however, did not hold that a plaintiff may establish "loss" by alleging lost revenues with no interruption of service.   Rather, the *Frees* court held that while the definition of "loss" is relevant for purposes of determining whether a plaintiff has satisfied the $5,000 jurisdictional threshold set forth in Section 1030(c)(4)(A)(i), "loss" is not relevant to defining the scope of a plaintiff's recovery or whether a plaintiff may recover compensatory damages for lost revenues.   *See Frees*, 2007 U.S. Dist. LEXIS 57211, *16.

In *Frees*, the defendants argued "that lost revenues are not compensable damages . . . because there [was not] an interruption of computer service," and "that the phrase 'any revenue lost, cost incurred, or other consequential damages incurred *because of interruption of service*' is not only a jurisdictional threshold, but also a limitation on the types of recoverable damages."   *Id.* at *9-10 (quoting 18 U.S.C. § 1030(e)(11)).   The plaintiff rejected this contention, arguing that a claimant "is entitled to recover ordinary 'compensatory damages' once the jurisdictional threshold has been met."   *Id.* at *10.   The *Frees* court agreed with the plaintiff.   The court explained that the requirement that a plaintiff has suffered a "loss" or "damage" aggregating at least $5,000, is a jurisdictional threshold, *see id.* at *6, 16, and that the jurisdictional requirement of a "loss" in

45

excess of $5,000 ceases to be relevant once satisfied and does not define the scope of a plaintiff's ultimate recovery.  *See id.* at *16 (holding that "the terms 'damage' and 'loss' are terms of art used to define a jurisdictional threshold," that these terms "do not control or limit what damages are available in a civil action," and that the terms 'compensatory damages' and 'economic damages' . . . define the scope of recovery").   Thus, the court held that once the plaintiff satisfied the jurisdictional threshold by establishing a "loss" in excess of $5,000, the plaintiff could seek compensatory damages, including lost revenue, without satisfying the definition of "loss," or its requirement that lost revenues occur "because of an interruption in service."   *Id.* (holding that "the Court finds that [the plaintiff] has established the CFAA's jurisdictional threshold and that the CFAA does not limit the recovery of lost profits as an element of compensatory damages solely to instances where there was an interruption of service").

Plaintiff quotes language in *Frees* that is applicable to the scope of recovery and not to the question whether a plaintiff has established "loss" in excess of the $5,000 jurisdictional threshold set forth in Section 1030(c)(4)(A)(i).   The scope of recovery, however, is not at issue here. Rather, the question before the Court is whether the complaint alleges facts sufficient to constitute "loss" that satisfies the jurisdictional threshold.   As *Frees* recognizes, lost revenues may satisfy the jurisdictional threshold only if the loss is "because of an interruption in service."   The complaint does not allege lost revenues because of an interruption of service.   Consistent both with the statutory definition of "loss," and the holding in *Frees*, the Court rejects Plaintiff's argument that lost revenues may satisfy the jurisdictional threshold even if the loss is not due an interruption in service.

The Court likewise is not persuaded to hold otherwise by Plaintiff's argument that the Court should deem its allegations of "loss" sufficient to state a plausible claim, because other

courts have allowed "vague" allegations of "loss" to survive a motion to dismiss.   Plaintiff cites *Synthes, Inc. v. Emerge Med., Inc.*, in which the complaint alleged that the defendants impaired the "integrity, confidentiality, and availability of data, programs, systems, and information contained in the protected computers," and that the plaintiff satisfied the jurisdictional threshold because it incurred "the costs of responding to the wrongful actions . . . , conducting damage assessments, identifying and tracing the information . . . misappropriated, and restoring data, programs, systems, and information to the conditions in which they existed prior to the . . . wrongful activity" as well as the costs of "lost revenue" and "other consequential damages."   No. 11-1566, 2012 U.S. Dist. LEXIS 134886, *70-71 (E.D. Pa. Sept. 19, 2012).   The court held that these allegations, although "somewhat vague," "just skirt over the pleading lines defined by [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)] to place Defendant . . . on sufficient notice of the claims against him."   *Id.* at 71-72.   Plaintiff also cites *Cohen v. Gerson Lehrman Group, Inc.*, in which the "[plaintiff] asserts that [defendant's] 'mass deletion' resulted in 'lost revenue, costs incurred, and other consequential damages' totaling more than '$5,000 within a one-year period,'" and the court held that this allegation—unaccompanied by any other specific allegations describing the loss—was neither conclusory nor legal in nature, and therefore was sufficient to withstand a motion to dismiss.   686 F. Supp. 2d 317, 325 (S.D.N.Y. 2010).   The *Cohen* court concluded that "[t]o the extent that [defendant] asserts that the losses 'appear' to include 'damages that are not recoverable under the CFAA,' . . . the factual nature of the alleged loss is more appropriately raised at summary judgment or at trial, following the development of a clear factual record."   *Id.*

Even if the Court were persuaded by the argument that vague allegations of "loss" are sufficient to withstand a motion to dismiss, the Court nonetheless would conclude that *Synthes* and *Cohen* are distinguishable because, in the case at bar, Plaintiff's allegations of loss are not simply

vague.   Rather, Plaintiff alleges that it incurred its loss due to "retain[ing], interact[ing] with and pay[ing] attorneys to investigate defendants' acts and to prosecute this action."   [Doc. 1, ¶ 45]. This allegation is not vague but rather specifically indicates that the costs incurred were in the form of attorneys' fees to pursue this CFAA litigation.   Thus, the cases cited by Plaintiff regarding vague allegations are not relevant or persuasive.

The Court concludes that Plaintiff has failed to allege facts sufficient to state a plausible claim that it has suffered a statutorily covered "loss."   Accordingly, the Court grants Defendant Osborn's motion to dismiss the CFAA claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

B.   <u>New Mexico Trade Secrets Act Claim</u>.

Defendant Osborn maintains that the allegations in the complaint do not establish that the information he downloaded constitutes a "trade secret" within the meaning of the New Mexico Trade Secrets Act and that the Court therefore should dismiss the claim pursuant to Rule 12(b)(6). The NMTSA defines a trade secret as (1) information, including a formula, pattern, compilation, program, device, method, technique or process," that (2) "derives independent economic value, actual or potential, from not being generally known to and not being generally ascertainable by proper means by other persons who can obtain economic value from its disclosure or use," and that (3) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.M. Stat. Ann. § 57-3A-2(D).   The Court holds that the information allegedly misappropriated by Osborn falls within the statutory definition of "trade secret."

The first part of the statutory definition provides that a "trade secret" constitutes "information, including a . . . compilation, . . . method, technique or process."   *Id.*   Defendant Osborn argues that, to the extent Plaintiff alleges that the information contains a "blueprint" for developing and pursing a practice in a complex area of law, this allegation is conclusory and is not

48

sufficient to state a plausible claim that the information downloaded contains any trade secret. Osborn maintains that the allegations "merely repeat the statutory elements of a trade secret set for[th] in the TSA without providing any factual allegations . . . to support that claim."   [Doc. 27 at 11].   The Court disagrees.

The complaint alleges that the information downloaded "concerned hundreds of client files," [Doc. 1, ¶ 20], that it "constitute[s] a blueprint for developing and pursuing a plaintiffs' mass tort practice," [*id.* ¶ 21], that it contains "knowledge, procedures and forms for the conduct of mass tort litigation," [*id.*, ¶ 53], and that it constitutes the "methodology and procedure employed by Branch in developing and pursuing plaintiff mass tort litigation," [*id.* ¶ 31].   These allegations do not simply parrot the NMTSA's definition of "trade secret."   Rather, they contain facts that, if assumed to be true, demonstrate that Plaintiff has stated a plausible—and not just speculative—claim that satisfies the first part of the statutory definition of "trade secret."

The Court also concludes that Plaintiff has stated plausible facts that satisfy the second part of the statutory definition of "trade secret," which requires that the information "derive[] independent economic value, actual or potential, from not being generally known to and not being generally ascertainable by proper means by other persons who can obtain economic value from its disclosure or use."   N.M. Stat. Ann. § 57-3A-2(D).   Plaintiff has alleged that the information provides a "blueprint," "knowledge, procedures and forms," and a "methodology and procedure" for developing and pursuing a plaintiffs' mass tort practice, [Doc. 1, ¶¶ 21, 53, 31], was "assembled at enormous expense in connection with mass tort claims against the manufacturer of the drug Avandia." [*id.* ¶ 20], was "not known to others who lack authorization from . . . Branch," [*id.* ¶ 22], was "otherwise not available to [others] without substantial and costly investments of time and resources," [*id.*, ¶ 53], "affords Branch a competitive advantage in the marketplace

compared to others who do not know or use such information, [*id.* ¶ 24], and is of "substantial value to Branch and to anyone desiring involvement in plaintiffs' mass tort litigation," [*id.* ¶ 31]. These allegations, if true, plausibly suggest that the information Osborn downloaded has independent economic value because it was assembled by Plaintiff at great expense and with significant expenditures of time, because it was not generally known to competitors, and because it affords those in possession of the information with a competitive advantage.   Plaintiff, therefore, has alleged facts that plausibly suggest that it could satisfy the second portion of the statutory definition of "trade secret."

The Court further concludes that Plaintiff has alleged plausible facts that are sufficient to satisfy the third part of the statutory definition of "trade secret," which requires that the information "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."   N.M. Stat. Ann. § 57-3A-2(D).   Plaintiff has alleged that the downloaded data "includes information the secrecy of which has been actively protected by Branch," [Doc. 1, ¶ 23], that the information downloaded was "privileged and confidential," [*id.* ¶ 15], and that the information was "not known to others," [*id.* ¶ 22].   These allegations allow the Court to draw the reasonable inference that the information Defendant Osborn downloaded satisfies the third prong of the statutory definition of "trade secret."   Because the Court concludes that Plaintiff has alleged sufficient facts that, if assumed to be true, satisfy all three elements of the statutory definition of "trade secret," the Court denies Defendant Osborn's motion to dismiss the NMTSA claim.

The Court is not persuaded to find otherwise by Defendant Osborn's argument that Plaintiff has failed to cite any authority for the proposition that attorney-client confidential information constitutes a "trade secret" within the meaning of the NMTSA.   The Court already has concluded that the allegations in the complaint contain sufficient facts that state a plausible

claim that the information downloaded falls within the statutory definition of "trade secret." Plaintiff need not also point to specific authority holding that information protected by the attorney-client privilege information can constitute a trade secret.   As Plaintiff points out, Defendant Osborn identifies no authority holding that information which otherwise constitutes a "trade secret" is excepted from the statutory definition simply because it is protected by the attorney-client privilege.

The Court likewise is not persuaded by Defendant Osborn's argument that Plaintiff cannot state a plausible claim under the NMTSA because the complaint alleges that Plaintiff does not know "all the details" of the "quantity and type of information" taken.   [*Id.* ¶ 17].   First, as the Court already has explained, not knowing "all" of the details is different from not knowing "any" of the details.   *See supra* at 28-29.   Second, as the Court also has explained, the complaint contains allegations that—when construed in Plaintiff's favor—suggest that Plaintiff knows enough details about the information to state a plausible claim that the information falls within the statutory definition of "trade secret."   *See id.*   The complaint alleges that the information Osborn downloaded contained "privileged and confidential information," [Doc. 1, ¶ 15], that the information "believed to have been misappropriated by Osborn includes materials that effectively constitute a blueprint for developing and pursuing a plaintiffs' mass tort practice," [*id.* ¶ 21], and that Defendant Osborn "obtain[ed] Branch's confidential, privileged and trade secret information, thereby obtaining Branch's knowledge, procedures and forms for the conduct of mass tort litigation," [*id.* ¶ 53].   The Court already has acknowledged that some of the complaint's allegations describing the nature of the information downloaded are prefaced with the language "believed to have been misappropriated."   [*Id.* ¶¶ 21-25].   At this stage in the litigation, however, the Court is obligated to construe the allegations in the light most favorable to Plaintiff and to draw

51

all reasonable inferences in Plaintiff's favor.  *See Tellabs*, 551 U.S. at 322; *Smith*, 561 F.3d at 1098.   Thus, although it is a close call, the Court concludes that the complaint contains sufficient facts that "'nudge[]'" the NMTSA claim "'across the line from conceivable to plausible.'" *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## CONCLUSION

For the foregoing reasons, IT THEREFORE IS ORDERED that Defendant MehaffyWeber PC's Motion and Supporting Memorandum to Dismiss for Lack of Personal Jurisdiction [Doc. 11] is hereby GRANTED; Defendant MehaffyWeber, PC's Motion and Supporting Memorandum to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim [Doc. 13] is hereby DENIED as moot, and Defendant William Shane Osborn's Motion and Supporting Memorandum to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim [Doc. 14] is GRANTED IN PART and DENIED IN PART as follows:  (1) the Court denies Osborn's request for dismissal of the CFAA and NMTSA claims on the ground that the Court lacks subject matter jurisdiction over the claims; (2) the Court grants Osborn's request for dismissal of the CFAA claim on the ground that the complaint fails to state a claim upon which relief can be granted; and (3) the Court denies Osborn's request for dismissal of the NMTSA claim on the ground that the complaint fails to state a claim upon which relief can be granted.

Dated this 26th day of March, 2014.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE